**FILED**

MAY 27 2008

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGORY CHARLES KRUG, )
    Plaintiff, *3975 Roswell Rd. N.E.* )
        *Atlanta, GA. 30342* )
        *615. 2540006* )
v. ) Case: 1:08-cv-00891
) Assigned To : Kollar-Kotelly, Colleen
) Assign. Date : 5/27/2008
JOHN PAUL STEVENS and ) Description: PI/Malpractice
GAIL B. JOHNSON, )
    Defendants. )

*JURY ACTION*

# COMPLAINT[1]

    Plaintiff Gregory Charles Krug ("Greg") hereby presents the following information to this Court as the basis for his Complaint against these defendants:

    **(1)** Greg is currently unemployable because the actions and inactions of the Federal Bureau of Prisons, the University of Texas Medical Branch and two jails which are located in rural Kentucky have mutilated both of his feet and swollen both of his lower extremities, and this has made ambulation very painful, which pain increases throughout the day. He has been compelled to remain within the Middle

---

[1] Greg hereby apologizes to this Court for proceeding *pro se*, but he could not find a competent lawyer who would assist him on a contingent fee basis as to such a politically explosive litigation, and he cannot afford to hire such a lawyer on an hourly rate basis.

1

ENCLOSURE 5

Judicial District of Tennessee until June 26, 2010 - despite his 18-year residence in **Orange County, California** and a contractual agreement with the Santa Ana, California Probation Office.

(2)    Defendant John Paul Stevens was employed as one of the U.S. Supreme Court's ("The Court") eight Associate Justices at all times which are relevant hereto, and he currently resides in the District of Columbia. Defendant Gail B. Johnson ("Gail") was employed as an Assistant Clerk with The Court at all times which are relevant hereto, and she currently resides in Fairfax County, Virginia.

(3)    This action has been brought under the authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 US 388 [2], because each of these defendants was acting "under [the] claim of federal authority" when Gail violated Greg's Sixth Amendment Right "to have the assistance of counsel for his defense" and Mr. Justice Stevens violated Greg's Fifth Amendment Right to the "due process of law."

(4)    On October 10, 1998, Greg was arrested in the Nashville Tennessee International Airport because he didn't timely declare the presence of either an **unloaded** .22 caliber pistol or some ammunition which were both located inside a suitcase that he wanted to transport to Los Angeles in an airplane's baggage compartment. He did not previously make that declaration because: **(a)** prior to 9/11, there was no reason to believe that anyone would be concerned by the presence of an **unloaded** pistol in an airplane's baggage compartment, and **(b)** Greg didn't see the

---

[2] All of the judicial decisions and the statutes (e.g., 18 USC § 1621) which have been cited herein are available *gratis* at www.fastcase.com by the use of these numbers during its 24-hour free trial.

2

sign that's barely visible on the last page of "Enclosure 21," a document which can be obtained from www.whiskey57.com[3]'s Table of Contents.

(5)   Thanks to the government's subornation of the perjured testimony which anyone can see by visiting Enclosure 7 - the most obvious example of which has been presented in that Enclosure's Exhibit DD - Greg was convicted on June 15, 1999 of violating 26 USC § 5861(d), 18 USC § 922(e) and 18 USC § 924(b) by a jury which was sitting in Nashville, Tennessee.

(6)   The Federal District Judge who presided at Greg's trial - **Nashville**'s "very honorable" Todd J. Campbell - denied Greg's Motion for New Trial on November 1, 1999, allegedly because there was "sufficient [non-perjured] evidence" to sustain each of those three convictions, even though he surely knew that: (a) an organization which he obviously believes to be irrelevant to what he does in Nashville had ruled (see page 12 of the Supreme Court's 352 US 1 opinion) that only the jury - and hence not he - could make that determination, and (b) the presence of several material perjuries; e.g., that of the still-indictable Elizabeth K. Bauer from **Orange County, California** (see pages 2 through 6 of Enclosure 7) and that of the still-indictable Janet R. Woerner from **Nashville** (see that Enclosure's Exhibit DD), had prevented it from making a proper determination.

(7)   On August 30, 2001, a three-judge panel (the "Panel") from the Sixth Circuit of the U.S. Court of Appeals (the "Sixth Circuit") - consisting of a District Judge from **Youngstown, Ohio**, who was "sitting [in the Sixth Circuit] by designation" named Peter C. Economus, and two Circuit Judges: Nathaniel R. Jones

---

[3] Lieutenant Krug's call sign in Vietnam was "Whiskey-Five-Seven."

and Gilbert S. Merritt - who reside, respectively, in **Cincinnati** and **Nashville** - found it necessary to either commit or condone Judge Campbell's commission of the **sixty-three** errors which have been summarized in Enclosure 28 and are detailed on pages (i) through (vii) of Enclosure 4 so that it could affirm those convictions in Case No. 99-6542.

**(8)** The document which has been designated Exhibit D to Enclosure 2 proves that the Sixth Circuit had determined - no later than November 15, 2001 - that Greg had satisfied the Sixth Amendment's sole prerequisite of indigence.

**(9)** On November 19, 2001, the Sixth Circuit issued its (Enclosure 9) Order, by which it announced that not even one of its **twenty-two** members[4] was willing to hear Greg's (Enclosure 17) petition for rehearing *en banc*, even though each of them knew that rehearing was **mandated** by their Circuit's Rule 206(c).[5] Their receipt of Greg's (Enclosures 19, 23, 24, 25 and/or 27) letters did not cause even one of them to change his or her decision.

---

[4] Boyce F. Martin, Jr. of **Louisville, Kentucky**; Alice M. Batchelder of **Medina, Ohio**; Danny J. Boggs of **Louisville, Kentucky**; Eric L. Clay of **Detroit, Michigan**; R. Guy Cole, Jr. of **Columbus, Ohio**; Martha Craig Daughtery of **Nashville, Tennessee**; Ronald Lee Gilman of **Memphis, Tennessee**; Gilbert S. Merritt of **Nashville, Tennessee**; Karen Nelson Moore of **Cleveland, Ohio**; David A. Nelson of **Cincinnati, Ohio**; Alan E. Norris of **Columbus, Ohio**; James L. Ryan of **Detroit, Michigan**; Eugene E. Siler, Jr. of **London, Kentucky**; Richard F. Suhrheinrich of **Lansing, Michigan**; Leroy J. Contie, Jr. of **Akron, Ohio**; Albert J. Engel of **Grand Rapids, Michigan**; Ralph B. Guy, Jr. of **Ann Arbor, Michigan**; Nathaniel R. Jones of **Cincinnati, Ohio**; Damon J. Keith of **Detroit, Michigan**; Cornelia G. Kennedy of **Cincinnati, Ohio**; Robert B. Krupansky of **Cleveland, Ohio**, and Harry W. Wellford of **Memphis, Tennessee**.

[5] The combination of: (a) Greg's inexperience with criminal litigation; (b) the brief period in which such a petition must be filed, and (c) the delay in his receipt of the Sixth Circuit's affirmation of his convictions cumulatively resulted in the mediocre quality of his (Enclosure 17) petition, but the language which is stated in Paragraph 2 of its third page was sufficient to inform each of those judges that their Circuit's Rule 206(c) was applicable thereto.

(10)  As can be seen on Exhibit A to Enclosure 2, on January 13, 2002, Greg asked The Court to provide him with the assistance of counsel as to the preparation of a petition for a *writ of certiorari*, and not having received a response thereto, he called The Court on or about February 1, at which time Gail correctly informed him that he should direct his request for that assistance to the Sixth Circuit.

(11)  As can be seen on Exhibit B to Enclosure 2, Greg filed a "Request for the Assistance of Counsel" with the Sixth Circuit as to his petition on February 3, 2002, and as can be seen on that Enclosure's Exhibit C, the same three-judge Panel which had found it necessary to either commit or condone Judge Campbell's commission of those **sixty-three** errors so that it could affirm Greg's convictions violated Greg's Sixth Amendment Right to the Assistance of Counsel by denying that Request on March 12[6], even though each of them knew that an entity which they must also view as being completely irrelevant had previously ruled (see 404 US 67) that every indigent petitioner was entitled to that assistance.  Greg believes, and he therefore alleges that the Panel denied his request for legal assistance because each of them knew that: **(a)** their denial would at least decrease, and perhaps even eliminate the probability that The Court would hear his appeal, and **(b)** if The Court did so, not only would it reverse Greg's convictions, but its opinion would be so critical of the Panel's decisions that its members would be privately ridiculed by the entire judicial fraternity.

---

[6] The most logical reason why it took the Panel 37 days to issue that one-sentence ruling was its temporary inability to locate a Supreme Court employee who would provide the service which is described in Paragraph (13), for without that service, its denial of Greg's Request would not have accomplished its desired objective of compelling him to proceed *pro se*.

5

**(12)** As can be seen on the second and last pages of Enclosure 2, Greg complied with the procedure which The Court had established on page 28 of 404 US 28 by asking it - on March 25, 2002 - to compel the Sixth Circuit to provide him with that assistance, and as can be seen on the first page of Enclosure 2, Greg refiled that Request with The Court via UPS on April 9 because Gail had informed him that The Court had not received the document which he had mailed to it on March 25.

**(13)** Knowing that: **(a)** Greg's possession of the UPS receipt would prevent her from pretending that the April 9 resubmission of the March 25 Request had not been received on April 12, and **(b)** Mr. Justice Stevens (who's the Sixth Circuit's "Circuit Justice") would surely order that Circuit to provide Greg with that legal assistance, Gail usurped Mr. Justice Stevens' authority on April 16 by surreptitiously issuing a (Enclosure 3) letter which pretended that Greg had re-issued Exhibit A to Enclosure 2 to justify her stating that: ". . . this Court does not appoint counsel for the purpose of preparing a petition for a *writ of certiorari*." She issued that Order, even though she knew that: **(a)** Greg had not **then** asked it to do so,[7] and **(b)** The Court had previously ruled (in the unanimous decision which was reported at 404 US 28) that his March 25 Request should be "treated . . . as a petition for [a] writ of *certiorari* seeking review of the Court of Appeals' order denying the appointment," and while some government shyster would have loved to argue that even a glorified paralegal like Gail had the authority to issue a ruling as to a party's **motion,** no reasonably competent attorney who wasn't kissing some Justice's fanny would claim that she had

---

[7] The most logical reason why Gail misstated Greg's March 25 Request was that 404 US 28 might not apply to the misstated version thereof.

6

the authority to decide any **petition**[8], because only The Court is permitted to issue such an order, pursuant to its Rule 16(3). Greg was therefore compelled to prepare his (Enclosure 4) petition (the "Petition") without anyone's assistance while he was being constantly bombarded by those ignorant savages' loud and idiotic utterances, which Petition was filed on April 24, 2002. **No one will ever know whether The Court would have granted** *certiorari*, **had it received the professionally prepared petition which the Panel and Gail prevented it from seeing, and since that inability was solely attributable to those entities' unconstitutional conduct, it must be assumed - for the purpose of this litigation - that: (a) The Court's receipt of a professionally prepared petition would have caused it to hear Greg's appeal, and (b) he would have prevailed as to that matter, which means that Gail - who, unlike the Panel, does not have more than a qualified immunity - then became financially liable for all of the damages which Greg has and will continue to sustain from April 16, 2002 to June 26, 2010.**

(14)   For reasons which should now be obvious, Gail placed both The Court's copy of her (Enclosure 3) letter and Greg's January 13, March 25 and April 9 requests for legal assistance into her shredder, rather than enter any of them onto the *Krug v. United States'* docket[9], and to prevent Greg from learning that she had concealed that

---

[8] It will be "interesting" to see whether Mr. Justice Stevens tries to cloak Gail with his (74 US 523) shield of absolute immunity by **pretending** that he told Gail to issue her (Enclosure 3) letter of April 16, even though a comparison of the language which she used in her letter to Greg of February 13 to that which she used in Enclosure 3 will prove that Gail knows how to indicate when she is merely relaying a Justice's decision and when she is acting without one's direction.

[9] **Unlike every other court in America**, The Court's Clerk - William K. Suter - has either not adopted or does not enforce a policy of placing every incoming pleading onto a docket before it is forwarded

7

outrageous conduct from her superiors, she ignored his (Enclosure 1) request for a copy of the docket which he finally obtained from the internet and has been designated Exhibit "A" hereto. **Her destruction of The Court's copy of her (Enclosure 3) letter and those three Requests constitutes four separate (18 USC § 2071) felonies, for which she could still receive up to 12 years of incarceration, because: (a) the (18 USC § 3282) Statute of Limitations has been extended by the subsequent commission of several "overt acts," and (b) the existence of the "February 11, 2002" and "February 13, 2002" entries on the (Exhibit A) docket proves that she knows the proper procedure.**

(15)   It would appear that neither Gail nor the Panel were confident that the combination of:

    (a)    compelling someone who didn't know beans about criminal litigation (because his propensity to comply with the law had caused his 54-year criminal history to consist solely of speeding tickets) to submit a pathetic (Enclosure 4) excuse for a *bona fide* petition to the highest court in this Country, together with

    (b)    denying Greg's two requests that it publish his opinion in the Federal Reporter[10] to prevent that opinion from establishing the

---

to the appropriate assistant clerk. **Had he done so, Greg's 24/7 nightmare might have ended in June 2002.**

[10] Greg's opinion qualified for publication therein under the Sixth Circuit's Rule 206(a)(2) because it created the 44 inter-circuit and seven intra-circuit conflicts which are listed on pages 36 through 38 of Enclosure 4.

ludicrous precedents[11] which that might have convinced The Court to grant *certiorari*, would be sufficient to **guarantee** that The Court would not hear Greg's appeal, because she did not inform Greg - until April 16, 2002 - of The Court's **unwritten** requirement (should it exist) that his January 9 "Motion for Permission to File a Petition in Excess of the (Usual) Page Limits" which she suggested that he refile during their March 29 telephone conversation must be accompanied by the 68-page petition which she had returned to him on March 1. Her April 16 denial of that Motion caused an eleventh-hour, chaotic revision of the Petition to reduce it to the 40-page limit, which prevented Greg from including **eight** of his arguments therein, as can be seen on pages 11, 16, 20, 21, 24, 26, 28 and 34 of his (Enclosure 4) Petition. **No one will ever know whether The Court would have agreed to hear Greg's appeal, had Gail's treachery not prevented him from presenting those eight arguments to it.**

(16) Since the prison's mail room did not deliver Gail's (Enclosure 3) letter of April 16 to Greg until shortly after his (Enclosure 4) Petition had been filed on April 24, it does not disclose Enclosure 3's existence, but the content of the documents that are now included in Enclosure 2(which documents were then contained in Appendices N and R to the Petition) was disclosed on pages (viii), (iv), 4 and 39 of Enclosure 4, and hence if anyone read his petition - and, with respect to any petition which was filed by an unrepresented inmate, **that's a very big "if"** - he

---

[11] For example, the Panel **pretended** that the Congress had **orally** amended 18 USC § 924(b) to provide that the mere placement of any firearm into interstate commerce had **retroactively** become a violation thereof; see "Exhibit B" hereto.

or she would have discovered that the Panel and Gail had each violated Greg's Sixth Amendment Right "to have the assistance of counsel for his defense." Despite his actual or deemed knowledge of all of the foregoing[12], Mr. Justice Stevens and probably two other Justices[13] ruled on June 3, 2002 (see 535 US 1119) that The Court would not hear Greg's appeal, even though it had obviously satisfied The Court's Rule 10(a). Each of those Justices will be pleased to tell the jury why he or she issued that ruling, despite their knowledge that Gail's violation of Greg's Sixth Amendment Right had created "a jurisdictional bar to [both] a valid conviction and [to a] sentence depriving [Greg] of [either] his life or his liberty," pursuant to a principle which The Court had stated on page 468[14] of 304 US 458, and hence The Court no longer had the right to deny his Petition, because such an act would (and it did) improperly continue Greg's incarceration.

---

[12] Since The Court receives about 6,000 petitions each year, but only has time to hear about 150 appeals, it must have instructed its assistant clerks to prepare a synopsis of each petition, from which one or more Justices will determine which petitions warrant further consideration. If the synopsis of Greg's petition did not provide a credible explanation for Gail's (Enclosure 3) letter of April 16, 2002, Mr. Justice Stevens' receipt of Greg's (Enclosure 29) letter should have caused him to **immediately** issue an order which permitted Greg to file another petition that had been prepared with the assistance of a lawyer, and his decision not to do so provides even more support for Greg's request for punitive damages.

[13] Mr. Justice Stevens' position as the Sixth Circuit's "Circuit Justice" surely means that he participated in that decision, but the Federal judiciary's exemption from F.O.I.A. and Gail's decision to ignore Enclosure 1 have and will continue to prevent Greg from learning the names of any other Justices who participated in that decision until he takes each Justice's deposition. Greg will then seek this Court's permission to name those other Justices as additional defendants.

[14] The Court also there stated: "A court's jurisdiction at the beginning of trial may be 'lost in the course of proceedings' due to failure to complete the court - as the Sixth Amendment requires - by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. **If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void. . ."**

10

(**17**) Since the April 16, 2002 termination of The Court's jurisdiction had also terminated each of those Justices' (74 US 523) absolute immunity, vis-a-vie Greg on that day, their June 3 issuance of an invalid order caused each of them to become (jointly and severally) financially liable with Gail for all of the damages which Greg has and will continue to sustain from June 3, 2002 to June 26, 2010 because Gail's April 16 violation of Greg's Sixth Amendment Right meant that their June 3 decision had been taken in the "clear absence of all jurisdiction[15]," and hence none of those Justices had more than a qualified immunity with respect to that ruling, pursuant to the principle which is stated on pages 356-57 of 435 US 349.

(**18**) Since all judicial records are exempt from F.O.I.A., Greg decided to appeal Mr. Justice Stevens' approval of the Panel's and Gail's respective violations of his Sixth Amendment Right by explaining all of the foregoing in his (Enclosure 29) letter and sending a duplicate original thereof to each of the Justices on February 22, 2006. The **only** response which Greg has ever received in response to that letter occurred on March 6 when Gail returned one of those letters with her (Enclosure 30) letter and on March 15 she returned another, but **she didn't provide Greg with the name of either of the two Justices who were so outraged by Greg's (Enclosure 29) objection to Ms. Johnson's (Enclosure 3) violation of his Sixth Amendment Right that each of them sent Greg's letter back to him.** On both occasions, her (Enclosure 30) letter falsely alleged that Greg's (Enclosure 29) letter – which

---

[15] According to page 709 of 31 US (6 Pet) 691: "**The power to hear and determine a cause is jurisdiction** . . ."

11

requested on the latter's page 7 that The Court either hear his appeal or grant the Motion for New Trial which Judge Campbell had improperly denied – was a request for "advice or assistance" or had raised a "legal question."

(19)   Since Greg **still** didn't want to believe that **any** of the Justices would tolerate one of their flunkies violating any of the Constitutional Rights which the Founding Fathers had given to every American citizen, he authorized *USA TODAY* to publish the (Enclosure 16) Announcement on May 5, 2006 and he informed Chief Justice Roberts of his intention to do so via his letter of May 3, but Greg still has not received a response to any of these communications, other than Gail's duplicate issuance of Enclosure 30.

(20)   While we don't know whether any of the other seven Justices' staff ever informed him or her as to the content of Greg's (Enclosure 29) letter, and maybe, just maybe, someone intercepted Greg's letters to Mr. Suter and to Chief Justice Roberts, and maybe some of the Justices neither saw nor heard of the (Enclosure 16) Announcement in *USA TODAY*, but sooner or later, from one source or another, **each of those "very honorable" Justices** surely learned that the Panel and Gail had each denied Greg's request for legal assistance and then **unanimously condoned Mr. Justice Stevens' approval of those violations of Greg's Sixth Amendment Right** by doing absolutely nothing to cure them[16]. Greg will seek this Court's permission to amend his Complaint as soon as he discovers: **(a)** which of the Justices, in addition

---

[16] This must be how those nine Justices decided to express their appreciation for Lieutenant (and draftee) Krug **twice** rejecting stateside orders so that he could **voluntarily** serve this Country with considerable distinction for over 17 **continuous** months (primarily as a "Forward [Artillery] Observer" with the grunts) in the NVA-infested, **I Corps Region of South Vietnam**; see pages 5, 6 and 7 of Enclosure 29.

to Mr. Justice Stevens, denied Greg's (Enclosure 4) Petition and should therefore become another defendant herein; **(b)** when and how Mr. Suter and each of the **NINE** Justices first learned that Gail had issued her (Enclosure 3) letter, and **(c)** why that Justice sanctioned Mr. Justice Stevens' approval of her violation of Greg's Sixth Amendment Right "to have the assistance of counsel for his defense" by rejecting both of the alternative solutions which are stated on the seventh page of Greg's (Enclosure 29[17]) letter.

---

[17] The most likely reason for their decision is a belief that they would be protected from financial liability by a principle which The Court had stated on page 486-87 of 512 US 477. This belief is without merit because the principle which they had then established assumes that if any of the courts which had participated in the civil plaintiff's criminal conviction had committed any errors that were not harmless, a district court could reverse the effect of such errors by granting a Motion which had been filed under 28 USC § 2255, and that assumption is not here valid, for the following reasons:

   **(a)**   In addition to terminally prejudicing the quality of his (Enclosure 4) Petition, the Panel's and Gail's respective denials of Greg's request for legal assistance effectively prevented him from appealing the effect of those Sixth Amendment violations upon The Court's decision not to hear his appeal because a layman (like Greg) who didn't have either the assistance of counsel or **ANY** previous experience with criminal litigation would have never even suspected - much less known - that a District Court had the power to reverse the effect of any erroneous decision which had been made by any higher tribunal - much less one that had been condoned by every single member of the Almighty Supremes - by granting a § 2255 Motion, and without that suspicion, that inexperienced and unrepresented layman would not have had any reason to review the authorities which are applicable to such motions (if there are any authorities that apply to this totally unique case of first impression), which is why Greg never filed such a motion;

   **(b)**   Even if Judge Campbell would have granted a § 2255 Motion that was based upon Mr. Justice Stevens' and/or Gail's unconstitutional misconduct which has been described above, the government would have appealed that decision to the Sixth Circuit, and its **unanimous** (Enclosure 9) decision to violate its Rule 206(c) by denying Greg's (Enclosure 17) Petition for Rehearing *en banc* proves that any panel from that Circuit would have reversed any district judge's approval of a § 2255 Motion which was based upon The Court's violation of his Sixth Amendment Right, because to do otherwise would constitute an admission that the very same Panel which it had previously determined to be perfect had committed a reversible error when it also denied Greg's request for that same legal assistance, **and that's**

13

(21) Prior to the commencement of his incarceration, Greg received $250 for each of the hours which he devoted to reducing a client's income tax liability, and due to his well-deserved reputation within the Orange County, California real estate development community as a very creative income tax practitioner[18], the only limitation upon his annual gross income was the number of hours in a year. If one allows a factor of two for the excruciating pain which any educated person would suffer as a result of being constantly surrounded by those ignorant savages, Greg's actual damages would be $6,570,000[19] per year and his punitive damages for this **willful** violation of his Sixth Amendment Right and the illegal continuation of his incarceration would be $65,700,000 per year, which is fair compensation for these defendants' **deliberate, willful and malicious** violation of his Fifth and Sixth Amendment Rights - **particularly since those were the last few years of reasonably good health before the Grim Reaper destroys what's left of his mind and his body** - and it should be sufficient to convince those nine **sanctimonious** . . . that

---

        **never gonna happen in the good ole' USA,** and

(c)     Once one recognizes the similarities between the Sixth Circuit and the "Klan-controlled state court" to which Mr. Justice Souter referred in his "it would be equally right . . ." argument that's stated on pages 501-02 of that decision, he or she can easily understand the futility of Greg filing any § 2255 Motion which would have been appealed thereto, and this invokes a principle which **Mr. Justice Stevens** noted in Footnote 8 on page 25 of 523 US 1: "Given [The] Court's holding that petitioner does not have a remedy under the *habeas* statute, it is perfectly clear . . . that he may bring an action under 42 USC § 1983.".

[18] Texas CPA No. 11,648.

[19] While that rate would have to be adjusted at least annually for the inflation which had occurred since the commencement of Greg's incarceration to reflect the correct amount of damages under this theory of calculation, the rate at which these damages accrued significantly decreased - but was not eliminated on June 27, 2007 - upon his release from that B.O.P. sewer.

they're merely the **temporary** guardians of the most important document which this Country has ever created.

(22)   Greg hereby requests that this matter be resolved by a jury.

Respectfully submitted,

/Gregory C. Krug/

Gregory Charles Krug
c/o 3975 Roswell Road, N.E.
Atlanta, Georgia 30342-4117
*Pro Se*   615 - 254 - 0006

[left column partially cut off:]

...S. 941, 94 S.Ct.
...74) (holding that
...xception the pas-
...ntrol of the fire-
...gives the carrier
...arm's presence).

...his bag to the
...ggage well, and
...with Woerner,
...t he had a fire-
...us, he did not
...ner that would
...at he was trans-
...act, he did not
...tained firearms
...Thomas to the
...d gone through
...ey were waiting
..."dump search"
...delayed admis-
...ify the passen-

...24(b)

...e evidence was
...conviction for
...4(b). Section
...commit there-
...e by imprison-
...g one year, or
...able cause to
...unishable by
...xceeding one
...rewith, ships,
...rearm or any
...foreign com-
...this title, or
...ten years, or

...ernment ar-
...evidence to
...nsported his
...ion in inter-
...tent to use
...murder of

---

Judge Ronald Bauer. We agree with the government.

First, Krug contends that insufficient evidence was presented to prove that he intended to commit a felony—the murder of Judge Bauer—and that he intended to do so with the pistol and silencer found in his luggage. Krug's bag contained a file on Judge Ronald Bauer of California. The file contained pictures of Bauer's house, handwritten directions to Bauer's house (with his address), and maps of the surrounding area. The file also contained two sheets that appear to be Krug's instructions to himself—essentially "To Do" lists. One has a notation that says, "delay hit until Dec." (J.A. at 1127.) Another says,

ID his car in Am

recon escape route

√ nite lighting @ his house

recon L.T. parking 4 # of attendants and lighting

1) pos Ford in ? parking lot ... [indecipherable]

2) find a place 2 wait 4 him 2 drive by

3) follow him home

4) K him when he gets out of his car

(J.A. at 1131.) In addition, Judge Bauer's daughter testified that he saw Krug taking pictures outside of their home in (approximately) early October of 1998, which would have been just prior to Krug's arrest at the Nashville airport.

Krug argues that certain notations in his file demonstrate that his notes about killing Judge Bauer were left over from an earlier plan and that he had intended to use an M-1 to carry out that task, not the pistol and silencer found in his luggage. However, viewing the evidence in the light most favorable to the jury's verdict, sufficient evidence was presented at trial to allow a rational juror to conclude that he was transporting the firearm and silencer to California with the intent to murder Judge Bauer.[4]

Second, Krug argues that there is no evidence to suggest that the firearm and ammunition were ever transported/shipped in interstate commerce because he was arrested before he left the Nashville airport. He does concede, however, that he intended to transport the items to California when he arrived at the Nashville airport on October 10, 1998. (Appellant's Br. at 29.)

"It is well established ... that an article delivered to a common carrier for shipment to another state is in interstate commerce from the time of its delivery to the carrier until it reaches the consignee." *United States v. Burton*, 475 F.2d 469, 472 (8th Cir.), cert. denied, 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973) (construing predecessor statute to 18 U.S.C. § 921 and affirming conviction for possession of a firearm traveling in interstate commerce despite defendant's argument that the transportation element was not proven) (citing *United States v. May*, 419 F.2d 553 (8th Cir.1969) and *U.S. v. Jones*, 446 F.2d 48 (4th Cir.1971)). The jury was so instructed. (J.A. at 947.) Based on the testimony that Krug had placed the bag in the baggage well so that it could be tagged and put on the plane and that Woerner generated a baggage tag, a rational trier of fact could have concluded that the bag with the firearm, silencer, and ammunition had been delivered to the airline in Nashville and was bound for California. Thus, <u>sufficient evidence was presented to support the jury's conclusion that the firearms were in interstate commerce when the government seized the bag.</u>

---

4. It bears noting that for sentencing purposes the district court independently credited the jury's finding that Krug was guilty of knowingly shipping or transporting a firearm in interstate commerce from Tennessee to California with the intent to murder Judge Bauer. (J.A. at 250.)

08 0891 FILED MAY 27 2008 Clerk, U.S. District Bankruptcy Courts

EXHIBIT B

B
08-891
CKK

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

**I (a) PLAINTIFFS**
GREGORY CHARLES KRUG

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)
88888

**DEFENDANTS**
JOHN PAUL STEVENS AND GAIL B. JOHNSON

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 11001
(IN U.S. PLAINTIFF CASES ONLY)

JURY ACTION

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
PRO SE
3975 ROSWELL RD. N.E.
ATLANTA, GA. 30342
615.254.0006

Case: 1:08-cv-00891
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 5/27/2008
Description: PI/Malpractice

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**☐ A.** *Antitrust*
☐ 410 Antitrust

**☒ B.** *Personal Injury/Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C.** *Administrative Agency Review*
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E.** *General Civil (Other)* **OR** **☒ F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(4)

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**ORIGIN**
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ Multi district Litigation
☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

DENIAL OF SIXTH AMENDMENT RIGHTS RESULTING IN PERSONAL INJURY   28 USC 1364

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY** N.F.   (See instruction)  ☐ YES  ☒ NO   If yes, please complete related case form.

DATE 5.27.08   SIGNATURE OF ATTORNEY OF RECORD  *NOT SIGNED*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.